HARDY, Judge.
This is a suit by plaintiff against his employer and the latter’s insurer for the allowance of workmen’s compensation as for total permanent disability, together with penalties. From judgment in favor of plaintiff awarding compensation at the rate of $30 per week for the period extending from July 3, 1956 to October 24, 1957, subject to a credit for compensation previously paid, the defendants have appealed. Plaintiff has answered the appeal, praying for an increase in the benefits awarded to a period not exceeding 400 weeks.
To plaintiff’s original petition defendants interposed an exception of no right and no cause of action, which was sustained by the trial judge with leave for plaintiff to amend. Following the filing of two supplemental *28 and amended petitions, defendants again filed an identical exception which, according to the minutes, was overruled, whereupon answer was filed, and trial was had upon the merits. At the beginning of trial, in further support of their exception, counsel for defendants entered a general objection to any testimony “ * * * which was referred to the merits.”
Before this court counsel for defendants re-urge the exception on the ground that neither plaintiff’s original petition nor his amended petitions contain any factual allegations either of an accident or of an injury resulting from a causal relationship between plaintiff’s occupation and his claimed disability, as defined by LSA-R.S. 23:1021.
The applicable portions of the noted statutory provision relate to the meaning ascribed to the terms “accident” and “injury”. The definitions are specifically set forth as follows:
“(1) ‘Accident’ means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.”
******
“(7) ‘Injury’ and ‘Personal Injuries' includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom.”
The jurisprudence of the State has conclusively established the term “accident” as including and comprehending the breakdown or impairment of a diseased organ or the exaggeration of a pre-existing physical defect.
In the instant case plaintiff alleged in his original petition that he was accidentally injured while in the employ of the defendant, Maxwell, and that the injury:
“ * * * occurred during the course, because of, and arose out of his said employment.”
Further allegations of plaintiff’s petition averred that his injury consisted of a fistula-in-ano and that his specific employment was as driver of a heavy lumber delivery truck which weighed approximately 30,000 pounds, fully loaded.
After filing of defendant’s exception, plaintiff filed an amended petition, which related only to the amount of his wages, and subsequently filed a second and supplemental and amended petition in which he amended the allegation of his original petition relating to the injury as follows:
“Petitioner amends article 4 of his original petition so that said article shall now allege as follows:
“That said injury consisted of and was a fistula-in-ano (a rectal fistula), which had developed during and because of the employment of plaintiff by defendant, Carroll W. Maxwell. That petitioner first noticed a slight or minor pain which was located on or at the outside of his rectum slightly on the right side, approximately two (2) months prior to July 3, 1956. That he told his employer about that pain a few days after he first felt it. That such pain would come and go periodically up to the date of July 3, 1956, on which date he felt more severe pain in said location than previously, and that he was working on said date when he felt such pain. During the two months prior to July 4, 1956 he was working regularly at his employment, which was that of driving a heavy lumber delivery truck, which when fully loaded weighed approximately 30,000 pounds. That during said period he was driving said truck an average of 1,000 miles per week, without a helper.
“That on July 4, 1956, early in the morning, he still felt pain in the stated location, which pain grew very severe during that day and he developed a temperature of approximately 103 degrees that afternoon. Finally, because *29 the pain grew so intense and because of his temperature, petitioner’s wife telephoned defendant Maxwell late that afternoon about petitioner’s condition and told him that petitioner needed to see a doctor. That if he, Maxwell, did not have any special doctor he wanted petitioner to consult, she would take petitioner to Dr. Eustis D. Wilson in Alexandria, La. That Maxwell stated he had no preference and it would suit him for petitioner to consult Dr. Wilson, which was done on July 5, 1956.
“That petitioner had been employed by defendant Maxwell for about five or six years before July 3, 1956, during which time his regular work was driving the said heavy lumber truck. That he never had any pain, as above described, before the approximately two months preceding July 3, 1956.”
Our examination of plaintiff’s pleadings persuades us that they failed to properly allege either the occurrence of an accident or an injury attributable to and causally connected with plaintiff’s employment. This finding would ordinarily require the rendition of a judgment sustaining defendant’s exception. However, in view of the fact that this is a compensation action, under which, by direction of the Legislature and by the interpretation of our courts, a plaintiff is entitled to the utmost consideration and should be accorded every reasonable opportunity to prosecute his claim before the courts, such a decree would not justify dismissal of plaintiff’s suit, but only a remand for the purpose of permitting adequate amendment of his pleadings. As further reason for avoiding such action, inasmuch as it appears, despite the minute entry, that defendants’ exception was referred to the merits and the case has been fully tried, we feel that it is proper to determine the issue presented on the merits and thus avoid the delay which would be suffered by all parties by reason of the alternative action of sustaining the exception and remanding the case for further amendment of plaintiff’s pleadings.
The issue presented by defendants’ exception relates to plaintiff’s failure to allege the occurrence of an accident or a causal relationship between the injury suffered and the employment. The merits of the case present, as the sole issue on this appeal, the factual question as to whether plaintiff has proved, by an adequate preponderance of the evidence, a relationship between his employment and the injury and the resultant disability of which he complains. The presentation of the issue in this form, of course, eliminates any consideration of the occurrence of an accident in the nature of an unexpected or unforeseen event happening suddenly or violently, which is not so much as contended by plaintiff.
The facts in connection' with this case were set forth by the district judge in considerable detail in his written reasons for judgment, as follows:
“Plaintiff had been employed by the defendant lumber company for about 5 years as a driver of a heavy lumber truck. He states that he drove the truck 5 or 6 days a week from 10 to 18-hours per day. Most of his time was spent loading the truck and driving it but when not so engaged, he performed odd jobs around the mill.
“He testified that about 2 months before July 3, 1956, he felt a little sharp pain ‘in his side here like, on my seat.’ This pain was apparently not too severe and he continued on until July 3, 1956. A severe pain hit him in his-rectum that lasted for about 25 or 30 minutes. At that time he told his employer that he did not feel good and was going home. That night and the next day he had fever and became very sick as a result of which he went to see Dr. Eustis Wilson of Alexandria on July 5. Dr. Wilson put plaintiff in the hospital on July 6 *30 where he remained until July 10. On July 10, Dr. Wilson opened an abscess in plaintiff’s rectum and on July 14 he was discharged from the hospital. He went back to work one day and states that he got sick again and went back to see Dr. Wilson the next day. Dr. Wilson later again opened the abscess and discharged plaintiff on October 7 as able to return to work.
“Plaintiff states that he did not feel that he was able to go to work so he then went to see Dr. Francis Brian. Dr. Brian examined plaintiff and had his brother, Dr. Harry Brian operate •on the fistula around October 14. Plaintiff returned home on October 23 and remained under treatment until January 22, 19S7 when he was discharged to return to work. He states that he worked 3 weeks but the pain was so severe that he was unable to •continue. He then returned to Dr. Harry Brian for further treatment and was again discharged on April 24, 1957.
“Plaintiff states that he is still unable to work, that he has tried to drive a vehicle but that it causes him so much pain that he is unable to do so.
“Defendants paid plaintiff compensation from July 3, 1956 through April 24, 1957 which was the date that he was last discharged by Dr. Harry Brian and the defendants have paid all of the bills for plaintiff’s treatment up to that time. The defendants did not offer any testimony to controvert plaintiff’s version of his illness and they did not deny that plaintiff had what is known as fistula-in-ano.
“Four physicians testified in this case, three for the plaintiff and one for the defendant. Dr. Eustis Wilson was not called as a witness although he was the first person to treat plaintiff. The next physician was Dr. Harry M. Brian. Although Dr. Brian was called as a witness on behalf of the defendants, plaintiff went to him of his own choice and was treated by Dr. Brian for several months. Dr. Brian stated (and in fact all of the medical testimony agrees in general) that a fistula begins within the rectum itself, within the crypt within the rectal tract. It begins as an inflammation in this area which is called the first stage of the fistula and then commonly goes into a second stage which is an abscess involving many of the tissues which surround the rectum. When the abscess drains either spontaneously or by opening, then an outer opening is formed so that a tract which connects the skin or the involved organ with the inner rectal tract is present and as time progresses, the abscess cavity itself shrinks to form a cord like structure with an opening in the center which is a fistula. The causes of a fistula are constitutional such as constipation and also traumatic. Dr. Brian testified, and all of the medical testimony so agrees, that the exact causes of a fistula cannot be stated but that probably the most common cause is constipation. Dr. Brian testified on page 6 of his deposition as follows:
“ ‘A. The — he was last examined by me on the 3rd of February, 1958
“ ‘Q. What did the examination reveal ? A. He was examined both clinically and with the use of an ano-scope, which is an instrument for the examination of the inside of the rectum itself. This patient at this time has a well healed scar which is located in the area around the anus, which extends from the anus outward in a direction of five o’clock for about— I measured it three and a half inches. It’s a well healed scar and at the time of this examination there was no inflammatory process present.
“ ‘Q. Doctor, is it your opinion that the- — -the fistula developed, or let me put it this way, that the fistula ini *31 tially developed as a result of the occupation of James O. Johnson? A. Since the factors in the development of fistulae are so numerous to choose one specific factor as the cause of the development of the fistula, I think would be impossible in my own mind. I will refer back however to the previous statement that trauma is a cause of the progression of the fistula.
“ ‘Q. Now, I don’t make reference at this time to the progression of the fistula, doctor, I’m — what I would like to know is it your opinion that truck driving by the patient, James O. Johnson, was what was the — was it the initial cause of the development of the fistula? A. The initial cause came from an inflammation of the crypt, the cause of this I do not know.
“ ‘Q. Is it — is—are you — are doctors able to diagnose the cause of this inflammation of the crypt? A. No more than putting them in specific categories such as we have done.
“ ‘Q. Is trauma one of the causes— A. It is one of the causes.
“ ‘Q. Doctor, what is your opinion of the physical ability or disability of James O. Johnson at this particular time? A. The person to who we refer — to whom we refer — is—weighs I believe approximately 300 pounds, probably more. His general physical condition I believe to be good. He has at present a well healed scar from a phy — fistula-in-ano operation, which, we have previously described. This scar is in an area which is weight bearing. The presence of this scar in such an obese person in such a weight bearing area may lead to irritation of the scar itself. This however was not seen at the time of the patient’s last examination.
“ ‘Q. Does the scar ever heal completely? A. By what we refer to as healing medically, yes.’
On page 11 of his deposition Dr. Brian stated that there was no further medical treatment that could be given plaintiff to improve his condition and that he was completely cured of the fistula that he originally had.
“Dr. William M. McBride, also a surgeon of Alexandria, testified on behalf of plaintiff that he saw plaintiff on September 10, 1956, at which time he examined an area where plaintiff had been operated on for a fistula. Dr. McBride testified that plaintiff told him that he wanted to change jobs and get away from truck driving because the scar pained him and he gave plaintiff a note that it would be advisable for him to abstain from his usual occupation of truck driving. However, Dr. McBride testified that he examined plaintiff on December 4, 1957 and there was no evidence of any irritation or recurrence of the fistula; that there was a possibility that due to the excessive weight and type of work of driving a truck the condition might arise again but that no one could say that it would occur. On page 5 of his deposition he describes the possibility of further difficulty as a ‘remote possibility’. On page 10 of his deposition he states emphatically that the incision on plaintiff was completely cured and that the operation was successful.
“Dr. C. P. Herrington of Alexandria also testified on behalf of plaintiff. Dr. Herrington saw plaintiff on May 14, 1957 and again on December 4, 1957. On page 7 of his deposition Dr. Herrington was asked the question whether a fistula could develop from the riding of a rough heavy vehicle such as the plaintiff claimed to have been riding in and his answer was that the thought ‘that would be very unlikely’. Dr. Herrington expressed the opinion that plaintiff could help his condition a great deal by losing some of his excessive weight but also that he could toughen himself up *32 over a period of time to where the irritation from the scar would not bother him. On page 9 of his deposition he testified as follows:
“ ‘Q. I realize that but I was just wondering if there was any way from your examination you could tell whether or not it was. Doctor, how long should it take a man to be able to toughen himself up as you say after one of these operations, toughen up that scar area? A. Oh, I’d say prob-bably a matter of months.’
On page 11 he testified that he thought plaintiff could drive a truck again and •could operate an ordinary vehicle without a cushion without too much pain even then.
“The other doctor who testified was Dr. T. H. Gaharan, a general practitioner located in Jena, Louisiana. Dr. Gaharan only saw plaintiff for an examination. The first portion of Dr. ■Gaharan’s testimony was taken by deposition in Alexandria at which time the defendant was not permitted to ■conclude the cross examination because of the doctor’s condition. After repeated efforts to obtain his presence to complete his testimony, he appeared in Court on March 19, 1958, at which time his condition had not improved very much. The testimony of Dr. Ga-haran does not add much to the case but in view of his condition, the Court is not able to place too much emphasis •upon it. He stated that he had never performed an operation on a fistula by himelf but in some respects his testimony is in complete conflict with the testimony of the other three doctors in the case and the Court prefers to rest its decision upon the testimony ■of Doctors Herrington, McBride and Brian.
“Plaintiff is a man who weighs approximately 300 pounds and all of the ■doctors agreed that his excessive weight would tend to place more strain upon the scar on his rectum but not any of the doctors testified, that the occupation of the plaintiff was the cause of the fistula. (Emphasis supplied.)
“There is a serious doubt whether plaintiff in fact suffered a compensa-ble accident but the Court resolves this point in favor of the plaintiff because even though the fistula originally began as the result of a constitutional cause it possibly was aggravated by the truck driving plaintiff performed. Even then, however, not one doctor would say that the occupation of plaintiff as a heavy truck driver was in fact a major contributing cause but would restrict themselves to stating that trauma was one of the many causes of a fistula. It is well settled that plaintiff must prove his case by a preponderance of the testimony. The Courts go far in seeing that a compensation claimant is given justice but they may not make guesses or conjectures the basis of a decision. It would appear to the Court that the defendants in this case have been most liberal with plaintiff by paying the medical bills and by giving him compensation for a period of more than 9 months. They did not attempt to deny the fact that plaintiff had a fistula and while he was under the care of any physician they are willing to pay compensation as well as his medical expenses. (Emphasis supplied.)
“From the testimony of the physicians in this case it would appear beyond any question that plaintiff is not, under any stretch of the imagination, totally and pemanently disabled as he claims. It is possible that plaintiff suffers some discomfort but from the medical testimony it would appear that any discomfort that he suffers could be alleviated by a gradual process of toughening himself which he has ap *33 parently failed to do. Dr. Herrington testified on page 9 of his deposition that at most it should take a matter of months for plaintiff to toughen up the scar area to where it would not bother him.” (Emphasis supplied.)
We are in accord with the above factual findings in every particular. However, while we feel that the facts stated overwhelmingly preponderate adversely to plaintiff’s claims, it is to he observed that the trial judge, despite the stated facts, awarded compensation in favor of plaintiff for a period of six months in addition to the almost ten months of payments which had been voluntarily made, together with medical expenses, by the defendant, insurer.
We are firmly convinced, upon the basis of the facts as found and stated in the opinion of the district judge, which we have adopted, that plaintiff has failed to establish a causal connection between his employment and the injury allegedly suffered, with any degree of reasonable certainty or even probability. In Roberts v. M. S. Carroll Company, Inc., La.App., 68 So.2d 689, our opinion emphasized the principle that mere possibilities are not sufficient to support a judgment in favor of a compensation claimant, citing more than a score of cases from the Supreme Court and the several Courts of Appeal of the State in support thereof. In Sparks v. Employers Mutual Liability Ins. Company of Wisconsin, La.App., 83 So.2d 453, 462, we reiterated the principle in the following words:
“Nonetheless, we think we would be going far afield, and would be establishing a dangerous precedent, if we were to conclude in the instant case that a relationship between occupation and disability has been established in fact only upon testimony of a highly speculative nature, couched in the most carefully guarded language of ‘mays’ and ‘mights.’ ”
It follows that the judgment appealed from should be, and, accordingly, it is, annulled, set aside and reversed, and
It is now ordered, adjudged and decreed that there be judgment in favor of defendants rejecting plaintiff’s demands, at his cost.