216 So.2d 889 (1968)
Mrs. Opal LUM, Plaintiff-Appellant,
v.
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Defendant-Appellee.
No. 11122.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1968.
Rehearing Denied January 7, 1969.
John P. Godfrey, Many, for appellant.
Mayer & Smith, Shreveport, for appellee.
Before AYRES, BOLIN and DIXON, JJ.
*890 AYRES, Judge.
By this action plaintiff seeks to recover from her former employer's insurer, workmen's compensation at the maximum statutory rate for total and permanent disability purported to have resulted from accidental injuries sustained in the course and scope of her employment in 1966, and which became manifest in an event of September 9, 1966, described as the "popping" of an already painful wrist. Penalties and attorney's fees were also sought for an alleged arbitrary discontinuance of compensation payments. Defendant denied plaintiff received accidental injuries and averred compensation payments were made under the erroneous assumption that plaintiff's disability was attributable to or causally related to her employment. From a judgment rejecting her demands, plaintiff appealed.
Plaintiff's disability is admitted, as well as the rate of compensation to which she may be entitled. The issues in this case are (1) whether Mrs. Lum's admitted disabling condition of her left wrist was caused by repeated small traumas to her wrist during the exertive manipulations of her hand and wrist in the course of her employment over a period of three-and-a-half or four years; (2) whether the disability arises from the fact that the particular type of work was doubled during a 3-week period beginning in May or June, 1966; and (3) whether the disability was aggravated and precipitated by the "popping" of her wrist on September 9, 1966, which immediately caused Mrs. Lum's left hand to "drag" and eventually caused the termination of her employment on September 13, 1966.
Defendant's assured operated a poultry-processing plant at Logansport, Louisiana, where poultry is dressed and prepared for market. Dressed poultry, at least partially frozen, suspended by their feet from a belt, are conveyed over a table or tables where the employees work. A lower belt conveys the giblets. As the poultry and giblets are conveyed over the tables the employees pick up the liver, gizzard and heart with the left hand, the neck with the right hand, and by use of both wrap these parts together in paper. The package is then transferred to the right hand; the chicken is pried open with the left hand, and the giblets are stuffed inside. Eight women, employed at two tables, processed an average of 5,000 chickens an hour.
Plaintiff was employed to carry on this operation. Her employment extended over a period of three-and-a-half to four years and from eight to ten hours per day. A 30-minute break was allowed in midmorning and midafternoon with an hour for lunch. For additional relief from the rigors of their labors, the employees alternated and were assigned other and less strenuous work every other day. However, for a period of three weeks prior to plaintiff's alleged accident, she was required to perform the principal duties of her employment without assignment to other tasks requiring less exertion.
The partially frozen chickens were occasionally filled with ice. If the chickens were hung on the conveyor belt in certain positions, the use of the employees' thumbs were required to pry open the cavity so the giblets could be inserted. If the chickens were in certain other positions, opening of the cavities required a rapid twisting motion of the wrist. The operation required haste and was accomplished only with force and exertion.
Mrs. Lum began to experience difficulties with her wrist in the spring of 1966. The wrist, however, did not become symptomatic until she was required to do her work six days a week. These symptoms persisted; her hand began to "drag" on the table. She could scarcely close her hand, and her left wrist became more painful; the muscles of her hand and forearm became swollen. On occasions, Mrs. Tressie Smith, plaintiff's superior and defendant's assured's superintendent, bandaged plaintiff's wrist.
*891 Despite the pain suffered, plaintiff continued with her work. However, on September 9, 1966, while performing the duties of her employment, plaintiff reached up to the conveyor belt to pry open one of the chickens to insert a package of the giblets in its cavity. Her left wrist "popped," causing immediate pain and her to exclaim, "Oh!" Mrs. Cynthia Wilburn, an employee at the same table, inquired of plaintiff as to what happened. After this occurrence, plaintiff could not close her hand fast enough to pick up the giblets; control of her fingers diminished; and pain in the wrist progessively worsened until she could no longer perform her duties after September 13, 1966.
On the day following discontinuance of her employment, plaintiff consulted Dr. Glen R. Johnson, a general surgeon of Carthage, Texas. X-rays of her wrist and a clinical examination were made. These examinations disclosed damage had been done to the left wrist joint and that plaintiff was experiencing considerable pain in her wrist. A cortisone-type drug was prescribed. A week later the wrist was placed in a plaster-of-Paris cast for a period of four weeks. Plaintiff's condition was attributable to hypertrophic arthritis superinduced, aggravated, or worsened by trauma. The "popping" sensation, of which plaintiff complained, was said to result from an arthritic developmental process causing spurs at the joints of the wrist. The apparent sound, sensation, and pain resulting therefrom were said to be caused by the forced separation of the bones in movements of the joint, particularly where the spurs grated upon and passed over one another. Mrs. Lum, on her own accord, sought the services of Dr. Johnson. She was seeking treatment and relief.
Much is attempted to be made of the fact that on the occasion of plaintiff's first visit to Dr. Johnson she did not give him a history of having sustained accidental injuries. Both she and the doctor account for this discrepancy by the fact that she was not questioned on the subject. Her failure in this regard is unimportant in view of a later report which accords with the facts established in the record. The doctor expressed the opinion that plaintiff sustained traumatic arthritis, and that the "popping" in the joint aggravated and worsened the arthritic condition, as a result of which she was disabled to perform her work.
Dr. E. C. Simonton, an orthopedic surgeon, examined plaintiff twice; first, on November 9, 1966. Swelling was noted about the left wrist with pain on attempted motion, the movement of which was restricted. A diagnosis was made of arthritis of the navicular greater multangular joint of the left wrist. Surgical arthrodesis, or fusing of the joint, was recommended. An opinion was expressed that the work plaintiff performed precipitated or aggravated her condition, which was again aggravated and worsened by the "popping" episode, which produced more acute pain in her wrist. The doctor explained that there is a tendency, where a person has arthritis in a joint, for the joint to catch or lock with motion. A gentle motion appears as a grating type of reaction, but, if produced by the application of force, a rough spot will sometimes catch or lock on another rough spot and the movement in the joint through the application of force will take on a "popping" sensation rather than a grating feeling. This latter movement was said to produce additional swelling and more pain. Though arthritis may eventually worsen without any activating cause, application of force to the joint, such as to cause a "popping" sensation, was said to aggravate the condition and cause it to worsen at a faster rate.
Dr. Bennett H. Young, an orthopedist, examined plaintiff on behalf of defendant. While his testimony was generally favorable to defendant, it corroborates that of Dr. Simonton in many respects. For instance, he agreed that trauma could cause an aggravation of osteoarthritis. The testimony *892 of Dr. Johnson is to the same effect.
Appropriate is the statutory definition that:
"`Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury";
and that:
"`Injury' and `Personal Injuries' includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom."
LSA-R.S. 23:1021, subds. (1) and (7). Predicated upon these definitions,
"The jurisprudence of the State has conclusively established the term `accident' as including and comprehending the breakdown or impairment of a diseased organ or the exaggeration of a pre-existing physical defect." Johnson v. Maxwell, 113 So.2d 27, 28 (La.App., 2d Cir. 1959writ denied).
The fact is not questioned that plaintiff had developed arthritis in her left wrist. This had begun to affect the movements of her hand and to impede her work. The subsequent strain and twist in reaching a chicken hung from the overhead conveyor belt, producing the "popping" sensation in her wrist, clearly and obviously aggravated and worsened the previously existing condition to such an extent that plaintiff was, within a few days thereafter, no longer able to pursue her employment. That, as already noted, plaintiff is totally disabled is conceded by defendant.
While it is unnecessary to determine whether the constant exertion required of plaintiff in the performance of the duties of her employment initially caused or superinduced the arthritis, it appears more than passingly strange, in view of the enormous exertion required of her left hand and arm, as indicated by one of the medical experts, that plaintiff had arthritis in her left wrist only and nowhere else.
For a determination of the question of whether Mrs. Lum sustained an "injury" as the result of an "accident," defendant relies heavily upon Danziger v. Employers Mut. Liability Ins. Co. of Wis., 245 La. 33, 156 So.2d 468 (1963). In that case, Danziger sustained a cerebral thrombosis or cerebral embolism on being advised of the unexpected death of a friend, a former associate in business. The theory of Danziger's case is that he experienced a stroke, because of an emotional shock, or psychic trauma. In denying recovery, the majority opinion of the Supreme Court pointed out, at page 471:
"In restricting by definition compensable injuries to those affecting the physical structure of the body, it (paragraph 7) [of LSA-R.S. 23:1021] necessarily narrows the scope of the statute to traumatic physical hurts, evidence of which must appear in order for the event to be classified as an `accident' as defined by paragraph (1) of R.S. 23:1021."
This language does not exclude from the definition of an "accident" the application of physical force to free a joint "frozen" or partially immobilized by arthritis. The application of such force immediately worsened plaintiff's condition to a degree, producing, as admitted, total disability.
The principle is well established in the jurisprudence of this State that employers take employees as they find them. A worker who is abnormally susceptible to disability from an accident is protected by the provisions of the compensation statute even though the accident would have caused little or no harm to a healthy worker. Nor is it important that the diseased or weakened condition might alone eventually have produced disability. Thus, an employee's disability is compensable when precipitated by an industrial accident, even though a preexisting, dormant physical condition or predisposition has contributed thereto. Behan v. John *893 B. Honor Co., 143 La. 348, 78 So. 589, L.R.A.1918F. 862 (1917); Brewster v. City of Shreveport, 115 So.2d 229 (La.App., 2d Cir. 1959); Ceasar v. Calcasieu Paper Company, 102 So.2d 314 (La.App., 1st Cir. 1958); Guillory v. Reimers-Schneider Company, 94 So.2d 134 (La.App., 1st Cir. 1957); Michel v. Maryland Casualty Company, 81 So.2d 36 (La.App., 1st Cir. 1955).
This case comes within the rule that an employee disabled by accident is not to be denied compensation merely because he was already afflicted with a disease which, in its ordinary course of progress, might have caused the disability eventually without any accident and where the accident merely superinduced the disability. Robichaux v. Realty Operators, 195 La. 70, 196 So. 23 (1940); Behan v. John B. Honor Co., supra; Livaccari v. Fidelity & Casualty Co. of New York, 118 So.2d 275 (La.App., Orls.1960cert. denied).
We are of the opinion that plaintiff sustained an "accident," as the word is defined in the workmen's compensation statute (LSA-R.S. 23:1021, subd. (7)), which worsened and aggravated a pre-existing arthritic condition resulting in her total disability.
No proof was offered as to any unpaid medical expenses. Plaintiff's rights to recover any additional medical expenses necessary to incur in the future should be reserved.
Nor do we find that defendant's failure to pay additional compensation was arbitrary or capricious, or that it acted without probable cause in presenting its defense. Therefore, penalties and attorney's fees will be denied.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed there be judgment herein in favor of plaintiff, Mrs. Opal Lum, and against the defendant, Employers Mutual Liability Insurance Company of Wisconsin, for the full sum and weekly compensation of $35 for the period of her disability, not, however, exceeding 400 weeks, beginning September 14, 1966, less compensation previously paid through May 12, 1967, with 5% per annum interest on each weekly installment from its maturity until paid, and for all costs including an expert-witness fee for Dr. E. C. Simonton of $75.
Plaintiff's rights to recover additional medical expenses which may be necessarily incurred are reserved.
Reversed and rendered.