SARTAIN, Judge.
This is an action in workmen’s compensation in which plaintiff, Johnny Willis, alleged that he sustained a back injury on November 21, 1966, and as a result became totally and permanently disabled. He received workmen’s compensation benefits of $35.00 per week plus medical expenses for nine weeks after the alleged injury but the payments were discontinued after an examining physician for the company, Dr. Irving Redler, reported that Willis had recovered and was able to return to his employment on January 23, 1967. The defendants are his employer and its workmen’s compensation insurer.
After trial, the court dismissed plaintiff’s suit for further benefits, statutory penalties and attorney’s fees, holding that plaintiff had not borne his burden of proving his entitlement thereto. For reasons hereinafter stated, we find that this conclusion is manifestly erroneous and we reverse.
The record well supports the fact that plaintiff, a sixty-one year old laborer, had never injured his back before, had never entered a claim for workmen’s compensation benefits before and did sustain a back injury while lifting heavy lumber on November 21, 1966. Although he did not immediately consider that it was serious and he continued to work that day, the next morning he was in substantial pain and saw a doctor about it. He then reported the incident to his employer and from that time on he never resumed his employment.
The evidence also preponderates in favor of a finding that plaintiff was not physically able, because of back -ailments. *471 to return to his duties as a heavy laborer at least during some periods after his discharge by Dr. Redler and also at the time of trial.
The primary issue before us is whether plaintiff has proved that his continuing back problems are causally related to the injury sustained on November 21, 1966. On this issue, plaintiff contends that the medical testimony is in substantial conflict and that weight should be given to the testimony of the plaintiff and other lay witnesses to establish the continuity of the disability. He also points to the general legal presumption in workmen’s compensation cases that a proved accident caused a following disability, absent any intervening cause. The defendants contend that there is no substantial conflict in the medical testimony on the issue of causation and that whatever problems the plaintiff may now have are not related to the specific injury of November 21, 1966. They further argue that, if any conflict does exist, greater weight should be given to the opinion of the doctor who examined the plaintiff during the weeks following the initial injury and who concluded that plaintiff had recovered from the effects of that injury.
Dr. Redler examined plaintiff for the first time on December 2, 1966. By x-rays he found that plaintiff had a normal spine. The x-rays revealed some “spurring”' on the lumbar vertebrae but Dr. Redler testified that the spurring appeared to be of long standing, a common finding in older laborers, and could not have been caused by the injury of November 21. However, he found from plaintiff’s complaint of localized pain in the left sacroiliac area and his limited range of movement that plaintiff had sustained an “acute myofascitis of the left gluteus maximus muscle at its point of attachment to the left posterior-superior iliac spine” or an acute muscle sprain or pull. Dr. Redler recommended diathermy treatment for twenty minutes per day for two or three weeks.
Plaintiff underwent twenty-seven such treatments at the Thames Clinic in Hammond over a period of five weeks and was advised by Dr. J. D. Thames that he could return to work. But on January 20, 1967, plaintiff reported back that he was unable to work because of back pain, whereupon Dr. Thames referred him back to Dr. Redler, who examined him for the second time on January 23, 1967. Plaintiff still complained of pain in his lower back, but Dr. Redler found that he was capable of movements through a normal range and inasmuch as the examination was otherwise negative, he discharged plaintiff as recovered from the strained muscles and able to return to his former employment.
Plaintiff did not return to work and on March 2, 1967, he was examined by Dr. William Fisher. Dr. Fisher found a moderate loss of lumbar lordosis, a moderate limitation of motion in four directions at the waist, tenderness over the left paraverte-bral muscle from the level of L-2 into the sacroiliac and the straight and flexed leg raising test to be negative on the right but strongly positive on the left. He concluded that plaintiff had a severe lower back injury with apparent residuals and was not able to return to work. He recommended treatment including medications for pain and muscle relaxation and continued physiotherapy. He thought that considerable time would be required for satisfactory recovery.
On June 13, 1967, plaintiff was examined by Dr. S. J. LoCoco, an orthopedic surgeon, whose significant positive findings included a palpable muscle spasm present in the erector spinae muscles bilaterally overlying the low back area and a poor reversal of the lumbar lordosis when bending forward. X-rays disclosed no evidence of fracture or dislocation but revealed a marked scoliosis present with the apex toward the left at the level of the second lumbar disc space “which may be indicative of muscle spasm present in the low back.” Dr. LoCoco also noted the “spurring” effect found earlier by Dr. Redler, and characterized this as hypertrophic os-teoarthritic change in the lumbar spine. *472 The disc spaces and the sacroiliac joints appeared to be normal. Dr. LoCoco concluded that plaintiff had sustained an injury to his back as a result of the accident (of November 21, 1966) and exhibited sufficient positive objective physical findings to indicate that he had not recovered. He recommended hospitalization and traction for two or three weeks and, if there was no improvements, a spinal tap and myelo-gram examination for a possible ruptured disc. The plaintiff did not undergo any treatment, apparently because of financial reasons.
More than two years passed, during which plaintiff neither returned to work nor obtained medical advice or treatment. In fact, after the original diathermy treatments, plaintiff only tried to help himself by taking aspirin and applying plasters to his lower back.
On October 17, 1969, plaintiff was examined by Dr. B. M. Unkauf, an orthopedic surgeon. Plaintiff complained of basically the same backache, especially in the left sacroiliac area. Dr. Unkauf found a marked paravertebral spinal muscular spasm and a limited range of movement accompanied by pain. He took x-rays of the lumbosacral spine which revealed the spurring noted on previous x-rays by Drs. Redler and LoCoco and a scoliosis of the spine to the left, also noted by Dr. LoCoco. He further found a slight wedging of the third lumbar vertebral body and a narrowing of the lumbosacral intervertebral disc space, both of which findings had not been noted in the examinations made two years earlier. He felt that plaintiff had the residuals of a sprain attributable to the accident of November, 1966, and probably a degenerative disc disease and was unable to perform the work of his previous employment because of what Dr. Unkauf estimated to be a twenty-five percent permanent disability of the body.
Dr. Unkauf saw plaintiff again on February 18,1970, and March 11, 1970, and concluded that his condition was unchanged. He arranged for a myelogram examination on March 16, 1970.
Although the results of the myelogram were negative for ruptured disc or tumor, Dr. Unkauf found that plaintiff’s spinal fluid contained an abnormally high level of proteins and, considering the x-ray appearance of the lumbosacral disc space, and the wedging of the vertebral body, he was of the opinion that some surgery should be done at the L5-S1 space to relieve plaintiff’s complaints.
With respect to the crucial issue of causation, Dr. Unkauf testified that based on his findings and plaintiff’s history he was “certain that some of the degenerative changes which are evident in the x-rays could have been aggravated by his alleged injury of November, 1966. One must also take into consideration the fact that some of the changes in the vertebral bodies at this time, of course, are attributable to his age.”
He further testified that the “spurring” was a common phenomenon in older laborers and represented a natural effort to heal sprains and strains sustained over a long period of time. He also said that the wedging of the third lumbar vertebral body could have been developmental or a result of the injury. As to the narrowed disc space, he said that it was most likely secondary to the injury but said that it was not necessarily uncommon to see it in a person who does labor. But he concluded that plaintiff’s activity of heavy lifting when he injured his back was the causative factor in what his present troubles are.
Dr. Redler examined plaintiff again in March of 1970 but testified that the examination was objectively negative except for plaintiff’s refusal to perform certain movements and his subjective complaints of pain. His findings indicated that plaintiff’s condition was unchanged from the time when Dr. Redler discharged him as recovered more than three years earlier. He found no functional impairment from an orthopedic standpoint and was of the opinion that *473 plaintiff was capable of the same physical labor he had previously performed.
Lastly, plaintiff was seen and examined on June 3, 1970, by Dr. Irvin Cahen, an orthopedic surgeon. Dr. Cahen was also furnished with some of the x-rays and medical reports made on prior occasions. His own examination produced essentially negative results as to abnormalities attributable to an injury, although plaintiff walked with a limp and voiced the same complaints of backache and inability to work. But his examination, together with his review of the plaintiff’s x-rays, indicated to him that plaintiff had moderately advanced degenerative osteoarthrosis of the vertebral zone and the lumbar regions. He was of the opinion that this condition or abnormality was of long standing and not representative of a singular injury, such as that of November 21, 1966. He found no evidence of acute arthritis and testified that if the injury four years earlier had in fact aggravated a pre-existing arthritic condition he should have found substantiating evidence. Dr. Cahen concluded that plaintiff’s condition was normal for a man of his age and background and was the result of developmental reactions rather than a single injury.
The lay testimony, relative to the cause of the alleged total and permanent disability, is simply that plaintiff had been a laborer for many years and had never experienced back pain prior to November 21, 1966, but thereafter has been suffering to the extent that he has not felt that he could perform heavy labor again.
Our evaluation of the above testimony is as follows:
1. Plaintiff did sustain an injury in the course and scope of his employment on November 21, 1966;
2. Dr. Redler diagnosed an acute muscle pull or strain on December 2, 1966;
3. Dr. Redler discharged plaintiff as recovered, although he had the same complaints of backache, on January 23, 1967;
4. On March 2, 1967, and on June 13, 1967, Drs. Fisher and LoCoco, respectively, found positive evidence of back ailment and concluded that plaintiff was unable to work, contrary to Dr. Redler’s opinion, and that his recovery would take time;
5. On October 17, 1969, Dr. Unkauf found positive evidence on back ailment and estimated that he had a 25% permanent disability of the body. After finding the condition unchanged, he performed a myelo-gram examination on March 16, 1970, which was negative for disc rupture or tumor, but x-ray results indicated surgery might help;
6. On March 10, 1970, Dr. Redler reexamined plaintiff with negative results and concluded that his condition was unchanged since his discharge of January 23, 1967, and he could do any physical labor he was capable of doing prior to the accident, contrary to Dr. Unkauf’s opinion;
7. On June 3, ,1970, Dr. Cahen found positive evidence of a back ailment, contrary to Dr. Redler’s findings, but in accord with Dr. Unkauf’s findings; and
8. Both Dr. Unkauf and Dr. Cahen found evidence of preexisting developmental, degenerative disc problems, and Dr. Un-kauf was of the opinion that the accident of November 21, 1966, activated or aggravated those problems, while Dr. Cahen disagreed that they were caused by a single injury of that nature.
Considering the conflict between Dr. Red-ler and Drs. Fisher and LoCoco as to whether plaintiff had recovered and was able to return to work within several months of the accident, we note that the lay testimony showed that he was continuously disabled throughout that period of time.
We find that Dr. Redler’s opinion in March of 1970 that plaintiff was perfectly capable of performing his prior work is not persuasive and is in remarkable conflict with the opinions of Drs. Unkauf and Cahen, which, together with the lay testimony, convince us that plaintiff was then disabled.
*474 Considering the conflict between Dr. Un-kauf and Dr. Cahen as to whether the accident aggravated the latent developmental abnormalities in plaintiff’s lower back, we repeat that the lay testimony showed that plaintiff had been a laborer for many years, had never complained of back problems pri- or to the accident, and had consistently experienced such pain since that time, and that he has never felt he could return to his work.
Under these circumstances, we find that two basic rules in workmen’s compensation law are applicable: where medical testimony is in conflict, the court may accord weight to the lay testimony as to proof of continuing disability; and where there is proof of an accident and a following disability without an intervening cause, it is presumed that the accident caused the disability.
We quote in further support of our holding here the following language from Lum v. Employers Mutual Liability Insurance Company of Wisconsin, 216 So.2d 889 (2nd La.App.1968), writ refused, 253 La. 642, 219 So.2d 175:
“The principle is well established in the jurisprudence of this State that employers take employees as they find them. A worker who is abnormally susceptible to disability from an accident is protected by the provisions of the compensation statute even though the accident would have caused little or no harm to a healthy worker. Nor is it important that the diseased or weakened condition might alone eventually have produced disability. Thus, an employee’s disability is com-pensable when precipitated by an industrial accident, even though a preexisting, dormant physical condition or predisposition has contributed thereto.” (citations omitted)
“This case comes within the rule that an employee disabled by accident is not to be denied compensation merely because he was already afflicted with a disease which, in its ordinary course of progress, might have caused the disability eventually without any accident and where the accident merely superinduced the disability.” (citations omitted)
“We are of the opinion that plaintiff sustained an ‘accident,’ as the word is defined in the workmen’s compensation statute (LSA-R.S. 23:1021, subd. (7)), which worsened and aggravated a preexisting arthritic condition resulting in her total disability.” 216 So.2d 892-893.
Lastly, we do not feel that the discontinuance of compensation payments was arbitrary or capricious, inasmuch as that action at the time was based upon Dr. Redler’s opinion that plaintiff was able to return to work as of January 23, 1967, and plaintiff’s claim for statutory penalties and attorney’s fees is denied.
For the above and foregoing reasons, the judgment appealed from is reversed and set aside, and judgment is hereby rendered in favor of plaintiff-appellant, Johnny Willis, and against the defendants-appellees, Starns-McConnell Lumber Corporation and Consolidated Underwriters, for the full sum and compensation of $35.00 per week for the period of his disability, not exceeding four hundred weeks, beginning November 21, 1966, subject to credit for compensation benefits previously paid, with legal interest on each weekly installment from its maturity, until paid, together with maximum medical benefits and for all costs of these proceedings.
Reversed and rendered.