CHASEZ, Judge.
The plaintiff, Andrew Zimmerman, filed this suit against the defendants, United Machinery Corporation and Liberty Mutual Insurance Company, Inc., its workmen’s compensation insurer, endeavoring to recover the sum of $14,000.00 together with legal interest from date of judicial demand *337 subject to a credit of $464.10 as workmen’s compensation benefits, penalties, attorney’s fees, and costs of this proceeding, to which he alleges he is entitled as the result of an injury sustained to his left thumb arising out of an accident in the course and scope of his employment by the defendant, United Machinery Corporation. He further alleges that as the result of his injury, he suffers from complete numbness of his left thumb making it impossible for him to perform the duties required by his former occupation as electrical mechanic, and entitling him to permanent total disability under the Louisiana Workmen’s Compensation Act.
The defendants answered and denied liability to the plaintiff. They admitted that $464.10 as compensation payments had been made to Zimmerman and that a proposed settlement of $400.00 was refused by the Court.
From a judgment of the lower court in favor of the plaintiff, the defendants have prosecuted this appeal.
The record reveals that on November 22, 1964, Zimmerman was injured in an accident in the course and scope of his employment as a mechanic repairing laundry equipment for United Machinery Corporaiton. As the result of his thumb being compressed between two pieces of steel, Zimmerman has a numbness of his left thumb, which causes him to be unable to work effectively with small parts such as nuts, screws, bolts and wires, when use of his left hand is required to manipulate these parts. Although he is still able to do mechanical work, he is limited to working with larger parts. When the use of smaller parts is required, he must seek the assistance of another. The veracity of this is corroborated by the testimony of Mrs. Zimmerman, who testified that she assisted her husband with these minute operations during a brief period of time that he operated his own washing machine repair service after leaving United Machinery Corp.
The testimony of Jerry Pilot, who was a fellow employee with Zimmerman at NOLA Washing Machine Company, was also to the effect that Zimmerman could not manipulate small parts with his left hand due to lack of sensation in the thumb of that hand. He further testified that while working with Zimmerman, he had been called upon by Zimmerman to assist him when it was necessary to use small parts such as nuts, screws and wires in his work.
Alex Daverede, who operated the NOLA Washing Machine Company, testified that he gave the work assignments to the employees and that he was principally concerned with having the work properly completed. He testified that he personally did not know whether Zimmerman had asked for assistance in handling small parts but it was possible that he may have done so.
The only testimony in the record contradictory to the evidence of the plaintiff is that of Sidney Bonnecarre, Jr., who is presently employed by United Machinery Corporation and who worked there with Zimmerman after his injury. Bonnecarre testified that he had seen Zimmerman use small parts during the period of about two months they both worked for United Machinery Corporation. He testified also that during a part of his working day he could observe Zimmerman’s activities from a distance of about ten to fifteen feet, and that he had seen Zimmerman use small parts in repairing equipment. He further testified that Zimmerman had never called upon him to assist in the use of such small parts. He did admit however that others, whose assistance could have been sought, were also in the work area at times. In addition he testified that Zimmerman’s work also consisted of painting and working with large parts.
Although Zimmerman returned to United Machinery Corporation within about a week after his accident the duties that he performed were limited because of his injury. While his salary remained at the same rate of $1.75 per hour and his designation was still that of an electrical mechanic, his total income was decreased due to the *338 loss of overtime as the company could no longer assign him alone on out of town jobs as many would require the handling of small parts. His employer had requested him to teach a new employee his duties, and fearing that he would be discharged Zimmerman voluntarily left United Machinery Corporation about two months after his injury and opened his own repair service for washing machines, with his wife assisting him. This venture was short lived, and he then began his employment with NOLA Washing Machine Company as a mechanic. Here, he was assisted by Jerry Pilot when it became necessary to use small parts. Later he worked in a filling station where he performed only a small amount of mechanical work. He is at present employed as a pipefitter. In all of these occupations, he has handled large equipment and when the use of small parts was required he has called on the assistance of others.
The medical testimony of three physicians also lend credence to the fact that Zimmerman can no longer handle small parts efficiently due to numbness of his left thumb.
Dr. Pierre Espenan, the physician whom Liberty Mutual Insurance Company requested to see the plaintiff, testified that the injury to his left thumb was a compound laceration, that is, a laceration going to the bone but not breaking it, and is termed a flap laceration. The lower flap extended down from the bone up to about the joint space but not into the joint space. After making reasonably good blood supply, Dr. Espenan sutured the flap into place with a simple suture. Dr. Espenan’s testimony reads in part as follows:
BY MR. COURTIN:
Q. “Dr. Espenan, did you examine Andrew Zimmerman on or about November 22, 1964, when he was injured while an employee of United Machinery Corporation?
A. “Yes, I did.
Q. “At whose request?
A. “At the request of Liberty Mutual Insurance Company.
Q. “Will you tell the Court what you found when you examined him ?
A. “He had a laceration of his left thumb; this was a compound laceration in the sense it did go down to the bone; it did not break the bone but it went down to the bone. This was a particular type of laceration; It’s called a flap laceration, the lower flap extending down from the bone up to about the joint space, but not into the joint space.”
Treatment was continued thereafter by Dr. Espenan until April 19, 1965. He further testified that he did not know whether the plaintiff returned to his original type of work, but that at the time of his discharge there was no functional disability of his thumb in that his range of motion was satisfactory and the pad was adequate to protect the bone; however, there was a loss of sensation proximal- to the scar at the interphalangeal joint at the phalangeal crease before the laceration where sensation should have been regardless of whether he had the laceration or not. The pin prick test revealed that Zimmerman could feel pressure as well as pain in some areas but there was almost complete loss of sensation in other areas within a distance of one milimeter. Dr. Espenan admitted that lack of sensation might prevent Zimmerman’s picking up or grabbing small objects, but added that it was difficult to definitely say whether he is capable of doing his work or not. His estimated loss of function was 15%.
Because of the loss of sensation in the distal phalanx or distal pad of the left thumb, Dr. Espenan requested a consultation with Dr. Riordan, a specialist in orthopedics who has specialized particularly in treatment of disorders of the hands. Dr. Espen-an testified as follows:
Q. “Did you send him to an orthopedist ?
*339 A. “Yes, sir. There was some question about loss of sensation, about loss of sensation in the distal phalanx or the distal pad of the thumb. I was questioning the possibility of either correcting this by exposing the nerve to see if the nerve was intact or by removing the neuroma which may have presented itself in the region of the scar. I wanted Dr. Riordan to look at it to give me an opinion as to whether this should be done or not.
Q. “Did Dr. Riordan give you a report?
A. “Yes, he did.
Q. “What did you determine as a result of his report?
A. “He told me — it’s a two page letter. He felt, in all probability the patient had had an injury to the nerve, not necessarily being cut in half, but probably bruised; that as a result of the healing process the scar tissue had surrounded this nerve and prevented it from stimulating inself; it crossed out into the pad. He felt it wasn’t a complete loss of sensation in this finger; there was only a partial loss of sensation in this finger. He did estimate this at 30%. Relative to the pad of the finger itself, he advised if the patient continued to have serious pain in this pad he could go back in and remove what he felt to be a neuroma.
“He was of the opinion we could give it more time; this could take place subsequently, if it did prove to be extremely painful.
Dr. Riordan testified that Zimmerman had loss of motion to the proximal and distal joints amounting to about 50% less motion than in the unaffected thumb, with diminished sensation of the frontal or proximal aspect of the thumb at the tip which started at the phalangeal crease of the distal joint of the thumb, and the side toward the little finger was a little more numb than the opposite side. Zimmerman could grasp large objects easier than small ones. In Dr. Riordan’s opinion, the injury was a compression type along with the laceration, and probably the nerve was not cut but the compression injury was sufficient to cause the disfunction of the nerve with resultant diminished sensation.[1] He would not recommend surgery, advising that the thumb be left alone as possibly some improvement in sensation might occur, although there would probably never be full recovery. He further testified that without sensation in the thumb, Zimmerman would have to substitute his eyesight to perform functions with small objects. His diminished sensation would thus present a problem with work in areas as fuse boxes where he could not see but had to rely on palpation. • It was Dr. Riordan’s opinion that Zimmerman would not have a return of stereognosis, or third dimension feeling, which is the sensation that he needs to manipulate objects when his hand is in a blind spot, in order to know what he is feeling and doing with a particular part. His estimate of impairment of function was 30%.
Dr. William A. Roy also corroborated the testimony of Doctors Espenan and Ri-ordan that Zimmerman suffers a diminution of sensation which would decrease his efficiency of work with small parts.
After a careful consideration of the evidence and the law the lower court con- *340 eluded that Zimmerman is entitled to total permanent disability and rendered judgment in favor of Zimmerman and against United Machinery Corporation and Liberty Mutual Insurance Company in solido for the sum of $35.00 per week for 400 weeks, effective May 19, 1965, with interest at the rate of 5% per annum on past due installments from its due date until paid, subject to a credit of workmen’s compensation payments paid by the defendants to the plaintiff from the date of the plaintiff’s injury, November 22, 1964, which amounted to $818.29.[2] Judgment was also rendered in favor of Zimmerman and against • the United Machinery Corporation and Liberty Mutual Insurance Company for all medical expenses inclusive of expert fees amounting to $100.00 to Dr. Pierre Espenan and $100.-00 to Dr. William A. Roy.
The defendants contend that the lower court erred in awarding Zimmerman $35.00 per week effective May 19, 1965, until October 25, 1965, as he was employed in his regular occupation of washing machine mechanic for his same employer. We find no merit in this contention. The basic test supported by the jurisprudence is whether the wages paid subsequent to the injury are actually earned. If they are not earned, they are presumed to be in lieu of compensation.[3] In the instant case, while Zimmerman could not perform the same functions with small parts as he had before the injury, his wages were in compensation for work actually performed and they were earned by him.
The judgment of the Court a qua should be amended in one respect. We note that the judgment does not provide for the payment of expert fees to Dr. Daniel C. Riordan. Dr. Riordan was used as a witness by the plaintiff and the fee to which the Doctor is entitled should be paid by defendants. We hereby order the judgment be amended in this respect and set the fee at $100.00.
Under the circumstances reflected by this record it cannot be said that the trial court was guilty of manifest error in its factual determinations and evaluations of the credibility of the witnesses. Accordingly, the judgment should not be disturbed upon review. For the foregoing reasons the judgment of the lower court as amended is affirmed; defendants are to pay all costs incurred.
Amended and as amended affirmed.

. Later by his testimony in answer to questions put to him by the Court he said:
The Court:
“I am confused. When I asked you if the nerve was not cut when would you expect sensation to return, you said twelve to eighteen months.”
The Witness:
“Yes. This has been two years. He should be at maximum now.”
Thet Court:
“If a person still has lack of sensation in his hand, hypothetically, after a period of more than two years he still has that and it hasn’t improved, could you conclude then — ”
The Witness: “It probably was cut.”
The Court: “ — that it was cut?”

. Guillory v. Hartford Accident and Indemnity Co., 168 So.2d 360.

. Lindsey v. Continental Casualty Co. 242 La. 694, 138 So.2d 543, 545 (1962).