MARVIN, Judge.
In this worker’s compensation action, the employer appeals a judgment awarding benefits for total and permanent disability, contending that the claimant did not sustain an “accident”- within the meaning of the law and that if claimant’s disability from complications arising after surgery to correct a peptic ulcer is legally related to an admitted accident the employee sustained in 1978, the claims have prescribed. LRS 23:1031, 1209.
The claimant also appeals, contending that the trial court erred in allowing the employer to offset workers’ compensation benefits by the disability benefits that the claimant is eligible to receive under the social security law. 42 U.S.C.A. § 423, LRS 23:1225.
The thrust of claimant’s case is that pain from on-the-job back injuries dating from 1978 and the mental and physical strain of his job as a truck driver thereafter caused his ulcer to become aggravated and to require surgical correction on March 3, 1982. About six or seven weeks later, claimant’s liver abscessed and caused him to become critically ill and eventually disabled.
Following the lead of each counsel who couched their respective argument in terms of whether claimant suffered personal inju *989 ry by accident within the meaning of LRS 23:1021, 1031, the trial judge declared that he must find claimant disabled under the holding of Parks v. Insurance Company of North America, 340 So.2d 276 (La.1976); and McCoy v. Kroger Company, 431 So.2d 824 (La.App. 2d Cir.1983).[1]
Parks and McCoy are among the many cases liberally interpreting the statutory definition of accident, but which, on careful analysis,[2] hold that a claimant’s burden, of proving an accident may be greatly relaxed only where he meets his burden of proving the causal connection between the job activity and the disabling injury or disease. Malone-Johnson, §§ 213-220. Malone-Johnson cautions that
“Such cases should not be regarded as dispensing with the requirement that the claimant establish some causal link between the employment and the disabling event. There are still instances of proper denial of compensation where this burden is not discharged by the plaintiff.” § 215, p. 442.
That authority also observes that even though the trend of the many cases involving a claimant who is particularly susceptible to disability because of a pre-existing disease or condition is to favor coverage under the act, “it still must be established that the accident played some causal role in aggravating that condition_ [Compensation is properly denied when it does not appear that some work incident did in fact render the pre-existing condition worse.” § 232, p. 495. See also Malone-Johnson, § 261, as supplemented 1984.
Our review of the many eases, all of which are either or both cited and discussed in Malone-Johnson, leads us to generally conclude that the burden of proof of a claimant in a worker’s compensation case, who is predisposed to a disabling injury or disease, may be met in two ways: If the claimant suffers an incident or accident in the traditional sense where there is a symptomatic failure of a bodily organ or member, he is entitled to the conditional presumption that
“[His] disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided that the medical evidence shows that there is a reasonable possibility of causal connection between the accident and the disability.” § 232, p. 492. See also Robertson v. Scanio Produce, 449 So.2d 459 (La.1984).
In this first situation, the occurrence of the incident or accident considerably relaxes the claimant’s burden of proving the causal connection between the accident and the disability. If the claimant, in a second situation, is not able to point to a single incident or accident in the traditional sense, but is able to show more probably than not that repeated trauma and strain peculiar to his job caused his disability, this showing considerably relaxes the claimant’s burden of proving an accident in the traditional sense. See also Larson, The Law of Workmen’s Compensation, § 13.11.
This claimant urges that he succeeds in both ways. Not agreeing, we reverse and render judgment rejecting claimant’s demands. In the first instance, if the disability be traced to the slip and fall accident or incident on or before February 9, 1978, his claims arising out of that accident have prescribed. LRS 23:1209. In the second instance, and as we shall demonstrate, even viewing the evidence most favorably toward him, claimant has not borne his burden of proving that repeated trauma and strain peculiar to his job caused his disability.
FACTS
Claimant, who was 56 years old at the time of the trial, worked for Mid-South as a truck driver from 1974 until he was disabled in 1982. He drove tractor-trailer rigs *990 hauling sand and gravel approximately 60 hours a week when work was available.
Claimant said he suffered a slipped lumbar disc in 1954 but that this injury had healed completely before he went to work for Mid-South in 1974. He testified that on February 9, 1978, he slipped on ice and fell and hurt his back while working. He told his witness, Dr. McCutcheon, that this accident occurred February 9, 1977. He reported the accident to his employer but stated that he was not injured in the fall. He explained that he did not report an injury because he was afraid of losing his job. Mid-South’s records show that the slip and fall occurred January 30, 1978.
Claimant also made repeated complaints to doctors and to co-workers about stomach problems and ulcers for more than a decade before he began work for Mid-South. His co-workers at Mid-South denied that claimant complained to them about back problems. He saw a Dr. Gallagher in the 1950’s complaining of “pain and burning” in his stomach. He complained to his daughter about his stomach problems. He testified that the pain in his stomach worsened about six months after he slipped and fell on the ice and hurt his back. He said he began drinking daily a half-pint to a pint of whiskey mixed with milk and taking over-the-counter drugs to ease his stomach and back pain beginning in 1978. Sometime after 1978 he said he hurt his back again while driving a cement mixer for a short while and when raising or lowering the hood of one of Mid-South’s trucks. He also said that he hurt his back in 1982 while helping change a tire on a Mid-South truck a few weeks before he went into the hospital. The witnesses who changed the tire and whom claimant named and said he told about hurting his back squarely denied that claimant said anything about hurting his back. The only significant accidents involving claimant in the employer’s records concerned a shoulder injury on August 13,1976, and the slip and fall on ice on January 30, 1978.
On February 25, 1982, claimant told Mid-South employees that he needed some vacation time to allow him to enter the hospital for his stomach problems. He did not complain of any back problems or work-related difficulty.
On March 2, 1982, Dr. Wallace Brown, a Shreveport surgeon, caused claimant to be admitted to the hospital for treatment of “peptic ulcer disease.” The written history Dr. Brown obtained from claimant is summarized:
“patient states that he has had ulcer problems off and on since the 50’s. He has bled, he has been on multiple diets; he has had nausea and vomiting and has been hospitalized and treated by many physicians many times. And at this point, he is ready to have surgery and ... anxious to ... correct his problem.”
After surgical correction of his ulcer, Dr. Brown released claimant to return to work. Claimant worked April 15 and 16, 1982. On Monday, April 19, 1982, claimant drove a Mid-South truck to a wheel alignment establishment. While awaiting work to be done on the truck, claimant experienced stomach problems and was driven home by his wife. On April 21, 1982, Dr. Brown hospitalized claimant, noting “abdominal complaints for two or three days.”
Claimant became critically ill because of a liver abscess during this hospitalization. He suffered a collapsed lung, renal failure, heart failure, and was comatose for several days. He was in intensive care for several days and remained in the hospital until July 17, 1982. Claimant has a paralysis, characterized by his physicians as “foot drop” and walks only with leg braces. Claimant also suffered some brain damage and deterioration of memory. Claimant is totally and permanently disabled.
The doctors are not certain about the medical cause of claimant’s paralysis or brain damage. Dr. McCutchen, a Houston neurologist and lawyer who testified for claimant by deposition, opined that the paralysis could have resulted either from the medication claimant took during his hospital stay, from a metabolic dysfunction arising from claimant’s illness, or “most likely” from claimant’s previous disc injury (“in *991 1977”) which, combined with his prolonged hospital stay, affected the nerves in the lower spinal canal, the cauda equina, and caused the paralysis.
In Dr. McCutchen’s view, the paralysis was more probably a result of back injury than a metabolic or toxic source because of the location and isolation of the paralysis. The doctor explained that he would expect a metabolic or pharmacological paralysis to affect the hands and/or other areas of the body and would not be limited to foot drop.
In Dr. Brown’s opinion, claimant’s paralysis resulted from multiple system failures caused by the infection in claimant’s liver. Dr. Brown thought that “leakage” around the area of the surgery (the liver abscess) arose from either a “new” ulceration or more probably from claimant’s chronic ingestion of alcohol. Dr. Brown said that claimant did not demonstrate any paralysis after the ulcer surgery and before claimant’s readmission and second surgery.
Dr. Osborne, defendant’s medical expert in the fields of pain rehabilitation, stress, and stress management also testified. Dr. Osborne noted that claimant’s medical history was inconsistent with a disc injury because a person with claimant’s personality would be expected to complain to his peers. There is substantial evidence that plaintiff repeatedly complained for about 30 years about his stomach but not about his back. Dr. Osborne stated that intermittent back pain is consistent with mechanical or muscular back injury, but is not consistent with a disc injury where pain is constant. Dr. Osborne finally opined that claimant’s back injury was not a disc injury.
Also testifying by deposition was Dr. Kottle, an internist with the subspecialty of nephrology (the study of renal failure and electrolyte imbalances). Dr. Kottle thought it unlikely that claimant’s infection developed from surgery because of the localized nature of the abscess. He opined that the abscess could have been seeded from mouth abscesses or vice versa, could have developed from leakage, or from aspiration.
Dr. McCutcheon saw claimant one time on February 21, 1983. He said that claimant told him of a lumbar disc injury in 1954 with numbness in his leg, lasting for several years, and of the slip and fall on ice on February 9, 1977, and of continued back pain thereafter. He opined that claimant’s ulcer was caused by stress from the continued back pain and from fear that claimant would losé his job. Dr. McCutcheon concluded that claimant’s paralysis “may very well be due to spinal stenosis in association with lumbar discopathy ... [and that] toxic and metabolic etiology would also have to be considered [as a cause] in view of [claimant’s] prolonged hospitalization, drug therapy and hypermotility of the gastrointestinal tract.” Dr. McCutcheon stated that the only “sudden incident” causing a back injury related to him by claimant was the slip and fall on ice.
Dr. Brown concluded that the abdominal or liver abscess for which claimant was readmitted to the hospital in 1982 was not related in any way to claimant’s employment. Dr. Brown opined that claimant’s abscess “very probably may have redeveloped [from] some type of ulceration ... we felt that was probably due to — not to work, but to alcohol.”
Dr. Osborne concluded that the “possible explanations” for claimant’s disability include these possibilities: one possibility was that claimant was a “stress prone ... a stressful individual ... probably alcoholic ... [who] could have created his own ulcer.” Another possibility, which was thought inconsistent with claimant’s medical history, was “if [claimant] did have a back problem, with his personality trait, he would over-utilize over-the-counter drugs and ... alcohol and probably create most of his own problems.” Dr. Osborne said it would be “speculation” to deduce that claimant’s paralysis resulted from the infection, from the drugs administered to treat the infection, or from claimant’s laying flat on his back for a prolonged period of time. Dr. Osborne explained that claimant’s disability possibly could have been caused by any of these things and that the *992 most probable cause has not been diagnosed.
At this juncture, we note that claimant, characterized as a stress prone, neurotic individual who consumed daily at least eight ounces of whiskey from 1978 until his hospitalization in 1982, had a wife about 28 years his junior, who was younger than his daughter, and had a son who was in the penitentiary. Claimant’s argument (taken from his brief to the lower court) is that his “catastrophy,” caused by (1) his ulcer, (2) his neurosis, (3) his constant driving and straining at work, constituted personal injury within the meaning of the statute, even though there was no final “giving way” or “climactic breakdown ...” He asserts that the probability is that the prolonged hospitalization was the last cumulative fact that caused the paralysis and disability. Even if this assertion be accepted, claimant has not shown, other than by speculation, that his prolonged hospitalization was causally connected to repeated trauma and stress peculiar to his job as a truck driver. The law requires that a worker’s compensation claimant prove his case by more than speculation.
CONCLUSION
If claimant proved personal injury by accident from the January 30, 1978, slip and fall, any claims for disability resulting from that accident have prescribed. LRS 23:1209. This action was not instituted until February 14, 1983.
Claimant has not borne his burden of proving that either or both mental and physical strain peculiar to his job caused his disabling paralysis.
The trial court erred in finding Parks and McCoy controlling because the causal connection between the job related strain, physical and mental, after January 30, 1978, is at best tenuous and was not proved by claimant.
With this result, we need not consider claimant’s contention in his appeal that the trial court erred in applying LRS 23:1225.
DECREE
The judgment appealed is reversed and judgment is hereby rendered rejecting claimant’s demands at claimant’s cost.
REVERSED AND RENDERED.
SEXTON, J., concurs.

. The trial judge in McCoy is the trial judge in this case.

. Malone-Johnson, § 213, p. 426.