STOKER, Judge.
This is a workmen’s compensation claim based on a claim of permanent and total disability caused by a back injury. The trial court found that the plaintiff had not met his burden of proving that his injury was causally related to his employment and dismissed the suit. The plaintiff, Thad Broussard, appeals. We affirm.
We approve the careful and thoughtful approach of the trial judge and adopt as our own his Findings of Fact and Reasons for Judgment:
“FINDINGS OF FACT AND REASONS FOR JUDGMENT
“In January of 1980, Plaintiff, Thad Broussard, was hired by Morton Chemical Company (Morton) as a stock room clerk. He later worked as a mechanic’s apprentice and was subsequently transferred to the salt cake plant, performing manual labor when plaintiff’s superiors felt he was not learning the mechanic’s job quickly enough. After moving to the salt cake plant, plaintiff filed a grievance with the union complaining that he had been unfairly treated. This resulted in Morton agreeing to give Mr. Broussard a second chance to work as a mechanic’s apprentice.
“Plaintiff contends that he injured his back while digging in a tunnel at the salt *749 cake plant, rendering him totally and permanently disabled. He filed suit against Morton for benefits and medical expenses under the Louisiana Worker’s Compensation provisions.
“In West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979), the Louisiana Supreme Court set forth the applicable legal principles governing the burden of proof necessary to establish a work-related injury. In a worker’s compensation suit, the employee must prove by the testimony as a whole that more probably than not an employment accident caused the disability of which the employee complained. The Court went on to state that the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, in the absence of circumstances casting suspicion on the reliability of this testimony.
“Mr. Broussard first began to have back trouble in 1974 when he was about fourteen (14) years old. Dr. Richard LeBlanc, a New Iberia orthopedic surgeon, diagnosed plaintiff as suffering from a condition known as a spondylolysis defect of the L-4 par interarticularis on the right side. Dr. LeBlanc does not feel that this spondyloly-sis defect was a result of trauma, but rather that the condition developed during plaintiff’s growth cycle and subsequently became symptomatic. In 1975, Dr. Le-Blanc attempted to correct the problem by performing a fusion of the L-4 to the S-l vertebra. Plaintiff was discharged from Dr. LeBlanc’s care in January of 1976 with an assessment of total body impairment of 15-20%.
“Plaintiff began experiencing lower back pain in March of 1983. He was examined by Dr. LeBlanc on April 12, 1983. According to Dr. LeBlanc, x-rays revealed a spon-dylolysis defect of the L-3 par interarticu-laris bilaterally. At this time, plaintiff did not at all suggest that his back problems were work-related. He made subsequent visits to Dr. LeBlanc on April 26, 1983 and on June 10, 1983. Significantly, on neither of these visits did plaintiff indicate that his complaints emanated from an employment injury. It was not until July 8, 1983, after the June 30, 1983 closing of the Morton plant, that he informed Dr. LeBlanc that he had done some shoveling while at the salt cake plant and that he thought that his back difficulties stemmed from the repeated bending and lifting that job required. He never lodged a complaint concerning his back with the union representative, Ted Williams, nor is there any evidence that he ever mentioned having back trouble to any of his co-workers, friends, or to his father, a Morton supervisor. Plaintiff did not report a work-related injury to company officials until July 14, 1983, some four (4) months after he alleges the back pains commenced. As a matter of fact, Mr. Broussard collected approximately $3,400.00 in diability [sic] benefits and had eighty percent (80%) of his medical expenses paid by Prudential Insurance Company under an accident and sickness policy. He maintained on the Prudential claim forms that the ‘sickness or injury’ complained of did not arise out of Plaintiff’s employment. In an attempt to explain why he failed to report his back injury until after the closing of the plant, Plaintiff testified that he was apprehensive that he would lose his job if he entered a complaint. However, in the year 1983, Plaintiff reported two other on the job injuries. One involved an incident in which plaintiff got sulfur dust in his eyes and the other concerned a knee injury.
“Based solely on Plaintiff’s newly proffered medical history given to Dr. LeBlanc on July 8, 1983, the doctor opined that the shoveling that Plaintiff did at the salt cake plant probably precipitated the fatigue fracture in Plaintiff’s back. He felt that the 1975 fusion of the L-4 joint was still solid, but that the fusion had weakened the joints above and below the fused joint.
“Dr. William L. Meuleman, an orthopedic surgeon, reviewed Plaintiff’s medical history and the x-rays which Dr. LeBlanc took of Plaintiff’s back. He testified that Mr. Broussard’s back difficulties could be work-related. He, also, suggested that these problems possibly resulted from a *750 non-union of the joints in the 1975 back operation and that the problems would have ultimately manifested themselves with or without any trauma. Dr. Meule-man stated that the x-rays were of poor quality and that he was not sure that Plaintiff actually had a defect of the L-3 pars interarticularis.
“It is clear that in forming their opinions as to the cause of Plaintiffs back injuries, both doctors relied heavily on Plaintiffs statement that his pains first began after working with a shovel at the salt cake plant. Mr. Broussard maintained this position throughout the trial. Although the general rule, is that the uncontradicted testimony of a witness, even though the witness is a party, should be accepted as true, this principle is to be followed only if there is ‘absence of circumstances’ in the record casting suspicion on the reliability of this testimony. West supra. The above mentioned sequence of events leading to the filing of this suit casts considerable suspicion, in the Court’s mind, on the reliability of Plaintiff’s testimony. The Court finds that Mr. Broussard has not met his burden of proving by a preponderance of the evidence that his back injuries are work-related. The Court finds no causal relationship between Plaintiff’s back problems and his employment with Morton and must dismiss Plaintiff’s suit with prejudice. All costs of this proceeding are assessed to Plaintiff.”
This kind of case generally presents a twofold question. The first inquiry is whether there was an “accident” according to the definition found in the Workmen’s Compensation Act, LSA-R.S. 23:1021(1). The second inquiry is whether there was a causal relationship between the injury and the worker’s employment, that is, whether the injury is work-related. These two inquiries are closely related and both must be answered in the affirmative in order for the employee to receive compensation under the Act.
LSA-R.S. 23:1021(1) defines “accident” as “an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.” It is difficult to apply this definition to cases such as this case before us in which the injury appears to be the result of some continuous stress. There is a divergence of opinion in the jurisprudence concerning the question of whether there must be a precise moment which can be pinpointed as the time of the event which constitutes the “accident.” These two lines of jurisprudence are discussed in McCoy v. Kroger, Co., 431 So.2d 824 (La.App.2d Cir.1983).
The more conservative interpretation of “accident” requires a climatic breakdown that can be pointed to as the “accident.” In Lum v. Employers Mut. Lia. Ins. Co. of Wis., 216 So.2d 889 (La.App.2d Cir.1968), writ den., 253 La. 642, 219 So.2d 175 (1969), a plaintiff who suffered from a pre-existing arthritic condition experienced a popping of her wrist while wrapping and stuffing giblets into chickens at a chicken processing plant. In Hall v. Georgia-Pacific Corp., 390 So.2d 948 (La.App.2d Cir.1980), a plaintiff who worked at a plywood plant felt a popping in his shoulder while working with the plywood. As a result, a pre-existing automobile injury was aggravated. In Harper v. East Metals Corp., 397 So.2d 529 (La.App.2d Cir.1981), writ den., 401 So.2d 988 (La.1981), a plaintiff who also suffered from a pre-existing arthritic condition was required to do continuous heavy lifting causing soreness in his wrists. At one point he twisted his wrist causing injury. In Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972), on remand, 274 So.2d 783 (La.App.3d Cir.1973), a plaintiff suffered a sudden flash of pain which was the onset of a disabling stroke. In all of these cases there was a final and conclusive breakdown or a snapping point at which the body gave way.
The more liberal line of jurisprudence represents a broader interpretation of “accident.” In Gales v. Great Atlantic & Pacific Tea Co., 342 So.2d 241 (La.App. 4th Cir.1977), writ den., 343 So.2d 1077 (La.1977), a plaintiff working as a boner and a trimmer was subjected to drastic temperature changes many times a day. As a *751 result, a dormant rheumatoid arthritic condition was activated. In Ferrand v. Kaiser Aluminum & Chemical, 398 So.2d 37 (La. App. 4th Cir.1981), writ granted, 401 So.2d 1194 (La.1981), dismissed, 406 So.2d 584 (La.1981), a plaintiff contracted a scalp disease causing boils and cysts as a result of working in the hot humid climate of the “pot room” where he was employed. In Parks v. Insurance Company of North America, et al., 340 So.2d 276 (La.1976), the Supreme Court granted compensation to a seamstress who, though predisposed to bronchitis, contracted bronchitis from continuous contact with the dust and lint routinely found where she worked. In McCoy v. Kroger Co., supra, a plaintiff with a pre-existing degenerative foot condition developed blistery growths on his feet as a result of the constant walking, standing, and lifting required by his job.
In none of these cases was there a particular climatic breakdown or “giving way” of the body. In all cases where the liberal approach was taken the court found a strong causal connection between the injury and the employment. Circumstances in each case clearly pointed to the employee’s work or work condition as a major factor which caused or precipitated the injury. It appears that when the injury is clearly work-related courts have been willing to broadly construe the term “accident.”
These clear-cut conditions do not exist in the case of Thad Broussard. The record clearly shows that Broussard was engaged in several other activities which could have precipitated the injury. He and his brother admitted during trial that Broussard helped lift speakers weighing over forty pounds each. Broussard did not make the compensation claim or even suggest the injury was work-related until after it was announced that the plant would close and he would no longer have a job.
The trial judge reasonably and correctly found that Thad Broussard had not proven that his injury was work-related; therefore, a narrow reading of the term “accident” is correct. The discussion which appears in Malone and Johnson, Workers’ Compensation 2d Ed. Section 214 (1980), Louisiana Civil Law Treatise, pp.434-435, supports this approach.
Plaintiff cites two cases which refer to presumptions that arise in favor of the injured worker in workers’ compensation cases. In Guillory v. U.S. Fidelity & Guar. Ins. Co., 420 So.2d 119 (La.1982), the court reasoned that Guillory was not disabled before the stress-related accident and was found to be disabled after the accident. Thus, the accident and the injury were causally related. In Lennix v. St. Charles Grain Elevator Co., 439 So.2d 1249 (La. App. 5th Cir.1983), the court noted that a claimant’s uncontradicted testimony of an accident at work which is plausible, consistent and supported by the evidence is enough to constitute a preponderance of the evidence. As noted in Malone and Johnson, Workers’ Compensation 2d Ed. Section 259 (1980), Louisiana Civil Law Treatise, pp.572-573, “if an otherwise healthy worker suffers an accident and is thereafter disabled, it is presumed that there is a casual connection between the two, so long as the medical testimony establishes a reasonable possibility of such a connection.”
Even if the plaintiff may have enjoyed any one of these presumptions, it is clear that the trial judge was satisfied that the defendant had rebutted any presumption that may have arisen. Defense counsel points out the fundamental principle that the trier of fact can disregard as unworthy of belief the entire testimony of a witness if the fact finder finds that the witness has intentionally given any false testimony.
The trial judge simply did not believe the testimony of the plaintiff, and the medical opinions were based solely on the plaintiff’s belated claim that his back began to hurt after shoveling. The plaintiff presented testimony that was not plausible. He asked the court to believe that he did not know that he would be without a job because of the closing of the plant even though he was present at a meeting discussing the plant closing and its effect on employees. In addition, there was testimo *752 ny from another witness who said he had told Broussard that he would no longer have a job. The plant manager, Mr. Petre, testified that Broussard had come to see him to find out what would happen to him if he returned to work. Mr. Petre explained that the plant was closed and if Broussard was physically able to return to work there would no longer be a job for him at Morton Chemical. Petre explained that Broussard’s only financial help would be the six months’ benefits left on his accident and sickness insurance provided by the company. Petre testified that Broussard responded by saying, “Oh, well, I think — I think my problem was a job related problem as far as my back is concerned.” At this point he got up and walked out.
He asked the court to believe that he just could not remember a conversation he had with Johnny Indest, the safety coordinator at Morton Chemical. Johnny Indest testified that Broussard had come in to see him to tell him that he was not missing work because of an on-the-job injury.
He asked the court to believe that he had not checked the box on the insurance form which indicated that the injury was not work-related even though he applied for and received insurance benefits and even though there was evidence that only the employee was allowed to fill out that section of the form. He asked the court to believe that he had not reported the alleged “accident” because he was afraid of losing his job even though he reported at least two other injuries shortly before the incident at issue.
The trial judge could easily have found, as defense counsel suggests in his brief, that Broussard was “a young man who when confronted with the imminent termination of both job and disability benefits searched elsewhere for the answer to medical expenses and a period of unemployment.”
The trial judge was justified, considering all of the circumstances, in holding that the plaintiff failed to prove his case and correctly denied Broussard compensation.
Since we find that the trial court was correct in denying the claim, it follows that Morton was not arbitrary and capricious in refusing to pay benefits. Penalties and attorneys fees were properly denied. The judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.